State v. Hamilton.

All of this Division concur.

## THE STATE v. HAMILTON, Appellant.

Division Two, December 2, 1902.

1. **Assault with Intent to Kill:** SHOOTING FOR EFFECT: INTENT. Where one fires a pistol toward other persons on being ejected by them from a store, and wounds one of them, he can not defend a prosecution for assault with intent to kill by testifying that he shot for effect, and did not intend to do any harm.

2. **Right of Proprietor to Eject Intruder:** INHERES IN CLERKS. The right of the proprietor of a store to eject therefrom a turbulent and profane intruder inheres also in his clerks.

3. **Assault with Intent to Kill:** TESTIMONY OF PHYSICIAN AS TO NATURE OF WOUND. In a prosecution for assault with intent to kill, a physician's testimony that he was called to see the wounded person, and, on examination, found a gunshot wound about an inch to the right of the median line and three inches from the top of the collar bone, the ball ranging down, backwards and outwards, and remaining in the body, and never being located, is competent, as showing the close proximity .of accused to the injured person, and tending to negative the defense that the shot was merely "fired to scare."

4. ————: ————: ADMISSION OF DEFENDANT. Where one accused of assault with intent to kill admits firing the shot, the admission of a doctor's evidence as to the nature of the wound, even if the evidence was incompetent, is not ground for reversal.

5. ————: EVIDENCE: ANIMUS OF DEFENDANT. In a prosecution for assault with intent to kill, a witness's testimony that, a few moments before the shooting, accused entered witness's drugstore, called for bologna sausage, placed his hand on his revolver, and, on being pulled out of the store, said it was not sausage, but trouble, he was

after, and the testimony of another witness as to accused's purchase of cartridges shortly before the shooting, were admissible to show defendant's animus.

Appeal from Dent Circuit Court.—*Hon L. B. Woodside,* Judge.

AFFIRMED.

*J. J. Cope* for appellant.

(1)    The court erred in giving instruction 7 on the part of the State.    The defendant stands charged with having assaulted Bennett with intent to kill him. Defendant denies the charge, and swears that he did not intend to kill and that he only shot for the purpose of scaring away those who were pursuing him to avoid their assault; yet the court in this instruction tells the jury if they believe and find from the evidence that the defendant became angry on account of being put out of the room and recklessly fired his pistol at the crowd without any intention of hitting any particular person, but in such a way that a reasonable man would know that the said shot might hit and kill some of the persons in said crowd; then and in such case he should not be acquitted because he may have had no intention of killing the witness, Bennett. This defendant should not be convicted under this indictment unless he shot to kill Bennett.    While it may be true that the intent follows the bullet, yet if he did not shoot at Bennett or some other particular person with intent to kill, then under this indictment he could not be convicted.    (2)    The court erred in permitting the prosecuting witness, Bennett, and his physician, Dr. Welch, to describe the wound to the jury, and to tell how long and how bad he was afflicted by the shot.    This was only calculated to cause the jury to be prejudiced against defendant, and to sympathize with the State.    (3)    It was error for the court to permit Simms to give the testimony which he gave over the objections of the defendant; it was im-

proper and irrelevant. In fact all his testimony was foreign to the issue and only calculated to unjustly prejudice the minds of the jury against the defendant. The Palace drugstore was remote from the place of the shooting where the conversation between Simms and the defendant took place. At the time of this conversation and prior thereto the defendant had never thought of harming Bennett. (4) It was error for the court to permit Martin, a witness, to give the testimony which he gave over the objections of the defendant and against the defendant.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) Instruction number seven given on the part of the State is applicable to the evidence and was properly given. It not only conforms to defendant's testimony, but is based upon all the facts in the case and therefore warranted. (2) The evidence of Dr. Welch in which the nature of the wound is described, was essential as showing the character of the wound, whether made by a ball from a revolver, and its exact location on the body. The State must prove its case. Prior to the testimony of this witness defendant, so far as the record shows, had not admitted the shooting. It was therefore an essential fact to be proven. (3) Simms was a competent witness to show the condition and frame of mind of defendant at the time or immediately before the difficulty. While defendant made no threats to Simms against the prosecutor Bennett, yet he told Simms that it was not sausage he wanted but was looking for trouble. All this conduct transpiring but a few moments before the shooting was competent. The most that can be said is that it at least was not in anywise prejudicial to defendant. It had no such effect. The testimony of Martin, objected to by defendant, was competent. While it is true no threats were made against Bennett, yet it shows defendant was arming himself for a crusade of mischief.

SHERWOOD, P. J.—Indictment for assault by shooting with a pistol with intent to kill with malice aforethought one Berna Bennett. Verdict—guilty of the assault, but without malice, and three years in the penitentiary awarded as punishment.

The evidence is in substance the following:

The assault was made by defendant shooting Bennett with a revolver, the ball striking him on the breast about half an inch from the breast bone and about three inches from the top of the collar bone, ranging down, backwards and outwards; it was never located, and Bennett was confined to his room for several months.

On the night of November 3, 1900, Hamilton went into Hagle's store at Salem, in Dent county; the prosecuting witness described the difficulty thus: "If I remember on the night of the 3rd of November, 1900, between eight and nine o'clock George Hamilton came into the store as we were closing up the day's work; Mr. Hagle had just taken up the cash and had gone back to the desk and I was back to the desk talking to him and Arthur Murrey had just brought back his corn popper and he was arranging it and putting things away and George Hamilton came in and he says to Arthur Murrey, 'I want some sausage,' and Arthur says, 'We are out of sausage; is there anything else?' and he says, 'I want some sausage and I want it damn quick,' and he says, 'I have got the money to pay for it and I want it,' and Hagle says, 'You will have to get out,' and he says, 'I will not get out until I get ready,' and Hagle says, 'You will have to get out before you get ready,' and he made a move to put him out, and George made a motion to strike him and Hagle picked up a chair and put it against his breast, and Ross Murrey was in the butcher shop and he came out and grabbed him by his left arm and I grabbed him and we put him out the door and just as we got him to the door Hagle gave him a shove and Murrey and I held on to him and he pulled us out the door and about that time Hamilton grabbed his gun from his pocket and fired and the bullet struck me."   At the

time Hamilton fired the gun, the prosecutor had started back into the store.

Witness Will Simms testified that a few moments before the difficulty defendant was in the drugstore where he was clerking and while there called for bologna sausage; that he told defendant they did not keep sausage and that he could get it next door in the grocery store; that defendant was either intoxicated or mad; that he put his hand in his back pocket and witness saw a revolver; witness then caught defendant by the arm and pulled him out of the store; when he had gone a few steps he heard defendant say it was not bologna sausage he was after; that it was *trouble* he was wanting. Witness then walked back to his desk, secured a revolver and then went to the front part of the store when he heard the shot fired next door.

Witness Will L. Hagle testified that defendant came in his store and called for some sausage. He was told that they were out of sausage. Defendant insisted on having it. He cursed and became very loud and rough in his talk and conduct. Hagle told defendant he could not allow such talk in his place of business, that he must be still or get out; defendant said, "You will have to put me out." Witness took him by the shoulder and started to lead him out. From this point on, witness corroborates the statement of the prosecutor.

Tom Martin testified that defendant come in the store he kept and asked for ten cents worth of cartridges, and I got them for him, and while I was counting them out I said to him, George, I would not go and make a fool of myself like you did before.

This witness being asked if defendant talked intelligently, answered in the affirmative, and stated that only a few minutes after that, he heard the shooting.

In his testimony, defendant admitted the shooting, but stated that he *did not shoot to kill; that he shot for effect, to scare them away from him.*

Several witnesses testified on part of defendant as being in the store at the time of the shooting, but the proprietor of the store and his clerks stated positively

that they were not there at the time, and the testimony of defendant's witnesses differed somewhat from those of the State.

The instructions given on the part of the State were such as have for the most part received the sanction of this court, and the seventh instruction is more favorable to defendant than he was entitled to since it gives countenance to the idea that the shooting was *accidental,* when *no witness, not even the defendant, so testified.* And the latter part of the instruction speaks of defendant recklessly firing his pistol into the crowd, without the intention of hitting any one.

This court has long since put the quietus on the question of shooting without intention of hitting any one, and held no such instruction should be given in favor of a defendant. [State v. Nelson, 118 Mo. 124, and subseq. cases.]

This error in favor of defendant was also repeated in instruction 3 given by the court of its own motion, which speaks about defendant merely firing his pistol to *scare said parties.* Under our rulings, as above stated, a man who fires his pistol towards another or others in the circumstances this record discloses, will have to exonerate himself from blame and will not be permitted to do this by testifying he did not intend to do any harm. In other words, his intention will be measured and estimated by his *acts* and not by his subsequent explanatory *words.*

The sixth instruction given on behalf of the State, of the right of the proprietor of a store to eject any one therefrom who uses profane language in his place of business, has been approved by this court in State v. Reed, 154 Mo. loc. cit. 129.

And, of course, such right being in the proprietor, his employees had the right to assist the proprietor in ejecting the turbulent and profane intruder.

We discover no error committed in admitting evidence offered by the State. The testimony of Dr. Welch was competent as tending to show that from the dangerous nature of the wound, the ball being fired by

defendant while Bennett was quite close to him, and striking Bennett near the median line, it was not a mere reckless shot "Fired to scare," but with a murderous purpose in view.

And even if the evidence were incompetent, it is not seen how defendant could have been injured thereby, inasmuch as he admitted firing the shot, and Dr. Welch was only testifying as to the *result* of such shot.

The testimony of Simms was entirely competent; it tended very clearly to show the animus of defendant; *he wanted trouble;* and this only about two or three minutes before he fired the murderous shot.

The testimony of Tom Martin was admissible, for the like reason as that of Simms, as to the animus of defendant, who was, evidently, going on a hunt for *"trouble,"* and wanted to be armed so he could make that hunt successful; and in this he accomplished his purpose.

Finding no reversible error in the record, we affirm the judgment.

All concur.